UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:02CV-176-H

CHURCHILL DOWNS INCORPORATED                                          PLAINTIFF

V.

DOUG DEAREN and
THOROUGHBRED TRADITIONS, INC.                                         DEFENDANTS
a/k/a DERBYBOX.COM

**MEMORANDUM OPINION AND ORDER**

Plaintiff Churchill Downs Incorporated ("Churchill Downs") has moved for an order of contempt and for a temporary restraining order against Defendants Doug Dearen and Thoroughbred Traditions, Inc. (collectively "Defendants"). Churchill Downs claims that Defendants are violating a Consent Decree that the parties entered into on January 6, 2003. For the following reasons, the Court will deny both motions.

I.

Churchill Downs initiated this litigation in March 2002. Among other things, it alleged that Defendants misappropriated Plaintiff's season ticket holder list and used it for ticket-scalping purposes. The parties litigated the matter vigorously for several months before reaching a settlement. As a consequence, the parties entered into a Consent Decree which this Court signed on January 6, 2003. For the purposes of this action, two terms of the Consent Decree are of particular importance:

I. [Defendants] are permanently enjoined from the following actions:

. . . .

C. From using the CHURCHILL DOWNS mark (reg. no. 1,111,127), the KENTUCKY DERBY marks (reg. nos. 997,385 and 1,534,197) the TWIN SPIRES DESIGN MARK (reg. no. 2,565,972) and any other confusingly similar mark . . . *in connection with the solicitation and sale of horse racing tickets*;

D. From using the Churchill Downs' Marks and Designs (as defined above) in any matter, including in such a way as is likely to cause consumers to be confused, mistaken, or deceived into believing that Churchill Downs has sponsored, approved, licensed, or is [sic] any way affiliated with Defendant's businesses and activities *except as permitted by law* or by agreement with Churchill Downs. (Emphasis added).

For more than four years after the parties entered into the Consent Decree, Defendants continued to operate www.derbybox.com, a Web site that advertised itself as "The undisputed Derby Ticket and Derby Travel Package Specialist." For most of that time, that Web site was replete with references to the "Kentucky Derby" and "Churchill Downs." On April 5, 2007, Churchill Downs sent a letter to Defendants, stating that Churchill Downs was aware of the use of these Marks on the www.derbybox.com Web site, that Defendants could not use the Marks without permission, and that Defendants were violating the Consent Decree. Defendant Doug Dearen and Churchill Downs Assistant General Counsel Shawn Bailey corresponded several times over the next week as Dearen attempted to comply with Churchill Downs' requests, at least in part. To do so, Defendants removed numerous references to "Churchill Downs" and "the Kentucky Derby," although several uses of these words do remain, most prominently in the "applet" used to display tickets. By April 13, 2007, these negotiations had broken down and Churchill Downs filed this motion.

A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a

2

reasonable manner to comply.  See *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421(1986).

The grant or denial of a temporary restraining order and preliminary injunction is discretionary with the Court.  *See Summit County Democratic Cent. and Executive Comm. v. Blackwell*, 388 F.3d 547, 553 (6th Cir. 2004).  In deciding whether or not the requested injunctive relief is appropriate, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the [motion]." *Northeast Ohio Coal. for Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

## II.

The Court begins with the Consent Decree itself.  Under Section I-C of the Consent Decree, Defendants cannot use the Churchill Downs Marks in connection with the solicitation and sale of horse racing tickets.  This section implies that Defendants were actually giving up *all of* their rights to the use of the Marks, including any Fair Use under trademark law.  Considering that Defendants could have faced significant damages if they were found liable in the underlying action, it is not entirely inconceivable that Defendants would give up their rights under trademark law.

However, Section I-D of the Consent Decree introduces significant ambiguity into the document.  The phrase "except as permitted by law" is difficult to interpret.  It could mean one of two things.  It could mean that Defendant may not use Churchill Downs' Marks and Designs

in any way *except as permitted by law*; that is, that fair use under trademark law would be allowed. Alternatively, it could mean that Defendants cannot use the Marks in any way that would mislead consumers into believing that Churchill Downs is affiliated with Defendants' businesses and activities *except as permitted by law*. This latter explanation makes little sense, especially when juxtaposed with the next phrase "or by agreement with Churchill Downs." Therefore, the terms of Sections I-C and I-D are in almost direct contradiction with one another.

Under Kentucky law, extrinsic evidence may not vary the terms of an unambiguous contract. *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842, 847 (Ky. 1968). However, if the contract is ambiguous, parol evidence may be considered. *See, e.g., Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996). Parol evidence can include the behavior of the parties prior to or contemporaneous with the contract. *Luttrell v. Cooper Industries, Inc.*, 60 F.Supp.2d 629, 631 (E.D. Ky. 1998).

*Prior* to the Consent Decree, counsel for Churchill Downs sent a letter to Defendants' former counsel dated April 17, 2002. That letter made one objection to the content of a previous Web site maintained by Defendants, but did not object to the use of the name "Kentucky Derby" elsewhere on the same page. Of course, this letter was prior to the Consent Decree and therefore its probative value is limited.

However, Defendant Doug Dearen has submitted an affidavit stating that "[a]s of January 2003, Churchill Downs had approved the content of the derbybox.com web site for continued use . . . ." From that time until the April 5, 2007 letter, Defendants continued to use the Marks "Kentucky Derby" and "Churchill Downs" on the www.derbybox.com Web site. The Court has no reason to believe that the website has changed significantly in its use of the Marks "Kentucky

4

Derby" and "Churchill Downs" since January 6, 2003. It strains credulity to suggest that between the entry of the Consent Decree and early April 2007, Churchill Downs failed to review www.derbybox.com, especially considering Churchill Downs invested significant resources in the prior lawsuit against Defendants.

Plaintiff's motion for contempt does not meet any of the three prongs enunciated *supra*. First, the Consent Decree, as discussed above, was neither clear nor unambiguous. Second, the proof of noncompliance is not clear and convincing, given the ambiguity of the Consent Decree. Third, even assuming that the Consent Decree means what the Plaintiff says it means, Defendants did actually make reasonable attempts to comply with Plaintiff's demands. For instance, Defendants removed many references to "Churchill Downs" and "the Kentucky Derby" on the Web site and replaced them with references to "the Downs" and "the Derby" (although some references to "Churchill Downs" and "the Kentucky Derby" remain on the www.derbybox.com site, most prominently in the "applet" used to display available tickets).

For similar reasons, the Court must also deny Plaintiff's motion for a temporary restraining order. The Consent Decree is – in part – ambiguous on its face and thus a temporary restraining order would be inappropriate. The use of the "Kentucky Derby" and "Churchill Downs" words as descriptive phrases for over four years could well suggest Plaintiff's understanding that such use did not violate the intended meaning of the Consent Decree.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for contempt and motion for a temporary restraining order are DENIED.

cc:     Counsel of Record